# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **PRESTON T. MOORER, II,** | * | |
| Plaintiff, | * | |
| vs. | * | CIVIL ACTION NO. 17-00247-B |
| **NANCY BERRYHILL,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| Defendant. | * | |

## ORDER

Plaintiff Preston T. Moorer, II (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On April 11, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. **Procedural History**[1]

Plaintiff filed his application for benefits on August 21, 2014, alleging disability beginning March 16, 2014, based on "severe right ankle problems, plates and screws in right ankle, and fracture[d] neck." (Doc. 11 at 147, 154, 178, 182). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge L. Dawn Pischek (hereinafter "ALJ") on February 16, 2016. (Id. at 40). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id.). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 60). On May 26, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 24). The Appeals Council denied Plaintiff's request for review on April 18, 2017. (Id. at 5). Therefore, the ALJ's decision dated May 26, 2016, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on May 29, 2018. (Doc. 22). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

**II. Issue on Appeal**

> Whether the ALJ erred in assessing Plaintiff's complex regional pain syndrome ("CRPS")?

**III. Factual Background**

Plaintiff was born on February 23, 1979, and was thirty-seven years of age at the time of his administrative hearing on February 16, 2016. (Doc. 11 at 40, 178). Plaintiff graduated from high school and attended junior college for one year. (Id. at 46, 374).

Plaintiff last worked as a machine operator for a lumber company from 2008 to 2009, and for a paper company from 2012 to 2014. (Id. at 59, 191-94). Plaintiff testified that he has not worked since he was involved in a motor vehicle accident in March of 2014. According to Plaintiff, he broke his ankle in the accident and required multiple surgeries. (Id. at 46, 374). Plaintiff testified that he now walks with a boot when he goes out, but he does not wear the boot around the house. (Id. at 47). Plaintiff also testified that he can no longer work due to pain in his ankle, that his treating physician no longer gives him pain medication, and that sometimes, he takes over-the-counter pain medication. (Id. at 40-56). Plaintiff further testified that he can walk for about forty minutes before he has to sit down. (Id. at 55). According to Plaintiff, once he sits down, his pain is about a two or three on a ten-point pain scale. (Id. at 54). Plaintiff further testified that pain medication and elevating his leg helps the pain. (Id. at 53, 58).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14,

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

1999).

## V. Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an

assessment of the claimant's RFC.  See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004).  The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment.  See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

    **A. The ALJ did not err in assessing Plaintiff's complex regional pain syndrome (CRPS).**

In his brief, Plaintiff argues that the ALJ erred in failing to evaluate his complex regional pain syndrome ("CRPS") under SSR 03-2p.  (Doc. 12 at 1-2).  The Government counters that the ALJ did discuss Plaintiff's CRPS but that Plaintiff failed to establish

6

that it constituted a medically determinable/severe impairment. The Government further argues that the substantial evidence supports the RFC. (Doc. 13 at 4-7). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

An explanation regarding the identification and evaluation of CRPS under the Social Security Administration rules is provided by SSR 03-2p which states, as follows:

> RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time.
> ...
> RSDS/CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings, as discussed above. RSDS/CRPS may be the basis for a finding of "disability." Disability may not be established on the basis of an individual's statement of symptoms alone.
>
> For purposes of Social Security disability evaluation, RSDS/CRPS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following

7

clinically documented signs in the affected region at any time following the documented precipitant:

• Swelling;
• Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh);
• Abnormal hair or nail growth (growth can be either too slow or too fast);
• Osteoporosis; or
• Involuntary movements of the affected region of the initial injury.

When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

...

Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment. Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder. Other symptoms, including such things as extreme sensitivity to touch or pressure, or abnormal sensations of heat or cold, can also be associated with this disorder. Given that a variety of symptoms can be associated with

8

RSDS/CRPS, once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basis work activities.

For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statement based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. Although symptoms alone cannot be the basis for finding a medically determinable impairment, once the existence of a medically determinable impairment has been established, an individual's symptoms and the effect(s) of those symptoms on the individual's ability to function must be considered both in determining impairment severity and in assessing the individual's residual functional capacity (RFC), as appropriate. If the adjudicator finds that pain or other symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to perform basic work activities, a "severe" impairment must be found to exist. See SSR 96-3p, "Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe" and SSR 96-7p, "Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements."

SSR 03-2p, 2003 SSR LEXIS 2, *17, 2003 WL 22399117; see also Fell v. Colvin, 2016 U.S. Dist. LEXIS 133243, *9, 2016 WL 5408015, *3 (N.D. Ala. Sept. 28, 2016).

In the instant case, the ALJ acknowledged that Plaintiff had been diagnosed with CRPS on January 26, 2016, by his treating orthopedist, Dr. Mark Perry, M.D., after reporting ongoing pain in his right ankle from a fracture sustained in a motor vehicle accident on March 16, 2014. (Doc. 11 at 27, 367, 383). The ALJ determined that Plaintiff's CRPS did not cause significant functional limitations that would significantly limit his ability to perform basic work activities and, thus, that the condition was non-severe. Having carefully reviewed the record, the Court agrees that substantial evidence supports the ALJ's finding that Plaintiff's CRPS is non-severe and that the ALJ did not err in failing to evaluate Plaintiff's CRPS under SSR 03-2p.

In order for an impairment to be severe, it must be more than a slight abnormality or a combination of slight abnormalities "that causes no more than *minimal* functional limitations." 20 C.F.R. § 416.924(c) (emphasis added). Indeed, it must "*significantly* limit[]" an individual's "ability to do *basic work activities*." 20 C.F.R. § 416.920(c) (emphasis added). "It is [the] Plaintiff's burden to prove the existence of a severe impairment, and she must do that by showing an impact on her ability to work." Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669,

*13-14, 2013 WL 3901655, *5 (M.D. Fla. 2013) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("At step two, the SSA will find nondisability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'") (quoting §§ 404.1520(c), 416.920(c)); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.").

As the ALJ found, the record shows, that Plaintiff was involved in a motor vehicle accident on March 16, 2014, which resulted in a right ankle fracture requiring multiple surgeries and other medical procedures performed between March 17, 2014, and December 21, 2015, to repair the ankle fracture, drain infection, and remove hardware placed during the earlier surgeries. (Doc. 11 at 246, 250, 280, 367, 374). The surgeries and medical procedures were performed by orthopedic surgeon, Dr. Mark Perry, M.D. (Id. at 242-54, 280, 367, 374).

Following Plaintiff's initial surgery on March 17, 2014, to repair the ankle fracture and a second surgery on March 31, 2014, to perform an open reduction and internal fixation, Plaintiff developed an abscess in June 2014. Dr. Perry drained the infection,

noting that Plaintiff responded well to the procedure, that he was on antibiotics, that the wound was healing, that the swelling had gone down, and that Plaintiff's "moderate" pain level had also gone down.³ (Id. at 303). In late July and August 2014, Dr. Perry noted that Plaintiff was "doing well," that his pain had improved, that his incision and drainage area "look[ed] wonderful," that "the pain and swelling that [Plaintiff was] having about his ankle *[was] to be expected* given this type of injury," and that he was "pleased with [Plaintiff's] clinical healing." (Id. at 299-301) (emphasis added). Dr. Perry advised Plaintiff to take anti-inflammatory medications, apply ice, and wear a compressive stocking for swelling. (Id. at 301). On October 17, 2014, Plaintiff was hospitalized for another infection, and Dr. Perry drained the area, noting that Plaintiff was experiencing "mild to moderate" pain in his right ankle. (Id. at 319). Dr. Perry noted that Plaintiff's wound cultures were negative, and Plaintiff was discharged with antibiotics for home management. (Id. at 314).

Plaintiff returned in December 2014 reporting "significant" pain in his right ankle, and Dr. Perry noted tenderness to palpation

---

³ On April 8, 2014, following the second surgery, Dr. Perry noted that Plaintiff's right ankle was causing him "a lot of pain" and that Plaintiff was taking high doses of narcotics at that point. (Doc. 11 at 311). Dr. Perry refilled Plaintiff's prescription for Norco but lowered the dosage and instructed Plaintiff to decrease his use of the medication. (Id.). In May and June 2014, Dr. Perry refilled Plaintiff's prescription for Norco and noted Plaintiff's pain was "moderate mostly in nature." (Id. at 306-07).

and hypersensitivity but that the incision area was "healing well." (Id. at 337). Dr. Perry refilled Plaintiff's prescription for Norco and recommended that he seek pain management from a primary care physician and return as needed. (Id.). Plaintiff did not return for nine months. In September 2015, Plaintiff returned to Dr. Perry complaining of pain in his right ankle. (Id. at 359). An x-ray showed "stable" talar fracture without evidence of complication. (Id.).

On October 20, 2015, Dr. Perry completed a Medical Source Statement, opining that physical activity would greatly increase Plaintiff's pain and cause distraction from task. (Id. at 357). However, Dr. Perry further opined that, even with his symptoms, Plaintiff could work an eight-hour day, forty hours a week, "answer[ing] a phone." (Id.). Dr. Perry also recommended that the hardware placed during the earlier surgeries be removed. (Id.).

On December 21, 2015, Dr. Perry performed a third surgery to remove the hardware placed in the earlier surgeries, noting that one of the screws had broken and that internal fixation was causing ankle impingement, which was causing "significant ankle symptoms." (Id. at 367). The surgery was performed without complications. (Id.). At Plaintiff's post-operative examinations in December 2015 and January 2016, Dr. Perry noted that Plaintiff was "surprised how good his ankle feels;" that overall, he was "quite pleased with his result and symptom relief;" that his "incision look[ed] excellent;"

13

that most of his symptoms were "coming from where there was retraction on his superficial peroneal nerve" and that it was "improving" and "[would] continue to get better;" and that his range of motion could be "worked on aggressively" with exercises thirty minutes a day. (Id. at 360, 362).

In the final treatment note in the record dated January 26, 2016, Dr. Perry diagnosed Plaintiff with CRPS, stating, "I feel that he has CRPS of his sural and superficial peroneal nerve distribution and that he will need to be referred for a chronic pain management doctor." (Id. at 383). Dr. Perry noted, however, that Plaintiff was not having any more symptoms but, rather, was complaining that his right foot "fe[lt] weird," that tapping in the sural nerve region "result[ed] in discomfort to his 4th and 5th toe," and that this region "just fe[lt] funny." (Id.). Dr. Perry noted that Plaintiff's ankle motion was slightly better than it had been previously and that Plaintiff was working on his passive range of motion. (Id.).

In addition to the medical evidence detailed above, on January 29, 2016, consultative examiner, Dr. Andre Fontana, M.D., evaluated Plaintiff and found that he had poor toe/heel gait on the right and a limp on the right leg when he walked, that he had reduced range of motion in his right ankle with some hypersensitivity to touch, that his motor strength was 4/5 on the right, and that he had good range of motion of his hips, both knees, and left ankle and foot.

14

(Id. at 376). An x-ray of Plaintiff's right ankle revealed "traumatic arthritis" of the right ankle. (Id.). Dr. Fontana opined, "I feel the patient is limited to standing or walking up to 1 hour a day. He cannot do any climbing or walking unprotected heights. He would have difficulty with a lot of overhead work." (Id.). Dr. Fontana also completed a MSS (Physical) form, opining that Plaintiff could sit for eight hours a day and could stand/walk for twenty minutes at a time for one hour a day. (Id. at 378-82). Dr. Fontana noted that Plaintiff did not require the use of a cane or other assistive device to ambulate; that he could perform activities like shopping; that he could walk a block at a reasonable pace on rough or uneven surfaces; that he could climb a few steps at a reasonable pace with the use of a single hand rail; and that he could prepare his own meals and perform his own personal care needs. (Id.).

The record evidence of Plaintiff's activities of daily living also shows that he lived in a house with his girlfriend, that he could cook, that he took care of pets, that he could take care of his own personal care needs and did not need reminders to do things, that he did not drive but went out at least once a day, that he went to stores, that he got along well with others, handled stress well, handled changes in routine well, and followed instructions well. (Id. at 202-08, 374).

In addition, at the administrative hearing, Plaintiff

testified that he could stand/walk for thirty to forty-five minutes, that he was comfortable and experienced no pain when sitting, that he was doing home exercises, that Dr. Perry no longer prescribed him pain medication, that he did not see a pain management doctor because he had no insurance, that he did not seek pain medication from a primary care physician, that he rarely took over-the-counter pain medication because he did not like taking medicine, and that the medication provided relief when taken. (Id. at 49-58).

According to SSR 03-2p, when longitudinal treatment records document persistent limiting pain that is *out of proportion to* the severity of the injury sustained by the individual, and that pain is in an area where one or more of the specified, requisite signs has been documented, the CRPS constitutes a medically determinable impairment. Here, the substantial record evidence shows that Plaintiff's pain was neither persistent nor out of proportion to the severity of his injuries and multiple surgeries to repair his fractured right ankle. To the contrary, the evidence shows that Plaintiff's pain symptoms improved over time as there was a near nine-month gap in treatment between December 2014 and September 2015, that his pain was tolerable to the point that he declined even over-the-counter pain medication, and that his pain was expressly noted "to be expected given this type of injury." (Doc. 11 at 299-301). Therefore, the substantial evidence supports the ALJ's determination that Plaintiff's CRPS was non-severe.

16

Moreover, SSR 03-2p provides that, "once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." (Emphasis added). Here, the ALJ found that although Plaintiff was diagnosed with CRPS, it was non-severe; thus, the ALJ did not discuss SSR 03-2p. However, because the ALJ found that Plaintiff has the severe impairments of right lower extremity fracture(s), osteonecrosis, osteopenia, neuritis, and cervical degenerative disc disease (Doc. 11 at 26), the inquiry did not end. The ALJ took all of Plaintiff's impairments into account in developing his RFC.

Based on the record evidence detailed above, the Court finds that substantial evidence supports Plaintiff's RFC for a range of sedentary work with the stated restrictions.[4] Indeed, there is nothing in the record which indicates that Plaintiff's limitations

---

[4] The ALJ determined that Plaintiff has the RFC to perform a range of sedentary work with the following restrictions: Plaintiff can stand twenty minutes at a time or one-hour total in an 8-hour workday. Plaintiff can occasionally push, pull, and reach overhead. Plaintiff can frequently reach in other directions. Plaintiff cannot operate foot controls with his right foot but can occasionally operate foot controls with his left foot. Plaintiff can occasionally stoop, but is unable to climb, balance, kneel, crouch, or crawl. Plaintiff cannot have exposure to unprotected heights, moving mechanical parts, or vibration. Plaintiff cannot operate a motor vehicle. (Id. at 28).

17

exceed those in the RFC.[5]  Therefore, Plaintiff's claim must fail.[6]

**VII. <u>Conclusion</u>**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **10th** day of **September, 2018**.

                                          **/s/ SONJA F. BIVINS**
                                      **UNITED STATES MAGISTRATE JUDGE**

---

[5] The Court notes that even Plaintiff's treating orthopedist, Dr. Perry, opined that Plaintiff could work an eight-hour day, forty hours a week, "answer[ing] a phone," which is generally consistent with a reduced range of sedentary work. (Doc. 11 at 357). Likewise, consultative examiner, Dr. Fontana, opined that Plaintiff could sit for eight hours a day (<u>id.</u> at 378-82), and Plaintiff testified that he is comfortable sitting. (<u>Id.</u> at 52).

[6] Although Plaintiff has cited evidence in the record which he claims supports a finding that he is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. <u>See</u> <u>Figueroa v. Commissioner of Soc. Sec.</u>, 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").